# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | |
|---|---|
| SUNDANCE, LLC, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) CIVIL ACTION 14-0115-WS-C |
| | ) |
| SE PROPERTY HOLDINGS, LLC, | ) |
| | ) |
| Defendant. | ) |

## ORDER

This matter is before the Court on the defendant's motion for summary judgment. (Doc. 36). The parties have filed briefs and evidentiary materials in support of their respective positions, (Docs. 37-40, 44-45, 47), and the motion is ripe for resolution. After careful consideration, the Court concludes the motion is due to be granted.


## BACKGROUND

The defendant's predecessor ("Vision") loaned plaintiff Sundance, LLC ("Sundance") the principal sum of $3 million, secured by a mortgage on certain townhomes in which Sundance had an interest. The three individual plaintiffs[1] executed guaranties of the indebtedness. Litigation over the indebtedness resulted in a February 2012 settlement agreement ("the Agreement"), pursuant to which the plaintiffs agreed not to resist foreclosure on the collateral and further agreed to pay approximately $856,000 over time, evidenced by a promissory note ("the Note").

Seven of the units at issue had been constructed using Chinese drywall, and Sundance was a party to a class action lawsuit over Chinese drywall. Under the Agreement, Sundance assigned the "proceeds" of these claims to Vision, which

---

[1] There is a fourth, but he has filed for bankruptcy, and the defendant's motion does not extend to him. (Doc. 36 at 1 n.1).

proceeds would be applied as a credit against the balance owing under the Agreement.

In June 2012, Sundance executed a deed in lieu of foreclosure in favor of the defendant. Between March and July 2013, the defendant sold to third parties the seven units containing Chinese drywall. The class action thereafter settled, on terms that provided for remediation of affected properties.

The single count of the amended complaint, (Doc. 27), asserts a claim for breach of contract. It alleges that the defendant breached the contract "[b]y selling the condominium units for substantially reduced prices before remediation" and "by failing to obtain remediation of the units pursuant to the Chinese Drywall Litigation." (*Id*. at 5-6).

## DISCUSSION

Summary judgment should be granted only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment bears "the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir. 1991). The moving party may meet its burden in either of two ways: (1) by "negating an element of the non-moving party's claim"; or (2) by "point[ing] to materials on file that demonstrate that the party bearing the burden of proof at trial will not be able to meet that burden." *Id*. "Even after *Celotex* it is never enough simply to state that the non-moving party cannot meet its burden at trial." *Id*.; *accord Mullins v. Crowell*, 228 F.3d 1305, 1313 (11th Cir. 2000); *Sammons v. Taylor*, 967 F.2d 1533, 1538 (11th Cir. 1992).

"If the party moving for summary judgment fails to discharge the initial burden, then the motion must be denied and the court need not consider what, if any, showing the non-movant has made." *Fitzpatrick v. City of Atlanta*, 2 F.3d

1112, 1116 (11th Cir. 1993); *accord Mullins*, 228 F.3d at 1313; *Clark*, 929 F.2d at 608.

"If, however, the movant carries the initial summary judgment burden ...,
the responsibility then devolves upon the non-movant to show the existence of a
genuine issue of material fact." *Fitzpatrick*, 2 F.3d at 1116. "If the nonmoving
party fails to make 'a sufficient showing on an essential element of her case with
respect to which she has the burden of proof,' the moving party is entitled to
summary judgment." *Clark*, 929 F.2d at 608 (quoting *Celotex Corp. v. Catrett*,
477 U.S. 317 (1986)) (footnote omitted); *see also* Fed. R. Civ. P. 56(e)(2) ("If a
party fails to properly support an assertion of fact or fails to properly address
another party's assertion of fact as required by Rule 56(c), the court may …
consider the fact undisputed for purposes of the motion ….").

In deciding a motion for summary judgment, "[t]he evidence, and all
reasonable inferences, must be viewed in the light most favorable to the
nonmovant …." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243
(11th Cir. 2003).

There is no burden on the Court to identify unreferenced evidence
supporting a party's position.[2] Accordingly, the Court limits its review to the
exhibits, and to the specific portions of the exhibits, to which the parties have
expressly cited. Likewise, "[t]here is no burden upon the district court to distill
every potential argument that could be made based upon the materials before it on
summary judgment," *Resolution Trust Corp. v. Dunmar Corp*., 43 F.3d 587, 599
(11th Cir. 1995), and the Court accordingly limits its review to those arguments the
parties have expressly advanced.

---

[2] Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials, but it
may consider other materials in the record."); *accord Adler v. Wal-Mart Stores, Inc*., 144
F.3d 664, 672 (10th Cir. 1998) ("The district court has discretion to go beyond the
referenced portions of these [summary judgment] materials, but is not required to do
so.").

3

The Agreement provides in pertinent part as follows:

> 6. <u>Settlement Proceeds from Chinese Drywall Claims</u>. Sundance is a party to a class action lawsuit pending in the United States District Court for the Eastern District of Louisiana [style omitted], involving certain claims in connection with Chinese drywall (the "Chinese Drywall Claims"). The parties anticipate that Sundance *will receive proceeds* from the settlement of the Chinese Drywall Claims *in the approximate amount of $500,000.00* (the "Chinese Drywall Settlement Proceeds"). Sundance hereby assigns to Vision the *full amount* of the Chinese Drywall Settlement Proceeds, *including any and all monetary proceeds and payments* payable to Sundance that are derived from the Chinese Drywall Claims or from any other source whatsoever in connection with any and all claims made by Sundance relating to Chinese drywall, and shall execute an Assignment of Settlement Proceeds in favor of Vision in the form attached hereto as "Exhibit B." Sundance further agrees that the *full amount* of the Chinese Drywall Settlement Proceeds shall be *paid over* directly to Vision and Sundance shall direct the party or parties responsible for *paying out* the Chinese Drywall Settlement Proceeds to transmit such proceeds directly to Vision. Vision shall apply the Chinese Drywall Settlement Proceeds as a credit against the principal balance and all accrued and unpaid interest then due and owing under the Settlement Note and shall *refund any excess* Chinese Drywall Settlement Proceeds to Sundance.

(Doc. 38-3 at 3 (emphasis added)). The issue as framed by the parties is this: Did the settlement of the Chinese drywall litigation result in "proceeds" within the contemplation of the Agreement?[3]

The "threshold issue" is "whether the contract is ambiguous." *Certain Underwriters at Lloyd's, London v. Southern Natural Gas Co*., 142 So. 3d 436,

---

[3] The amended complaint asserts that the "Settlement Agreement and [Settlement] Note constitute a valid and binding contract." (Doc. 27 at 6). The Note, however, has absolutely nothing to say about the Chinese drywall litigation or satisfaction of the Note from proceeds of that litigation. (Doc. 1-1 at 46-48). The Court, like the parties, therefore confines its discussion to the Agreement.

453 (Ala. 2013) (internal quotes omitted).[4] "If the trial court determines that there is no ambiguity, it must determine the force and effect of the terms of the contract as a matter of law." *Id*. (internal quotes omitted). If the Court determines that the contract is ambiguous, "it must employ established rules of contract construction to resolve the ambiguity." *Id*. at 454 (internal quotes omitted). Only "[i]f the application of such rules is not sufficient to resolve the ambiguity [do] factual issues arise." *Id*. (internal quotes omitted).

"The issue whether a contract is ambiguous or unambiguous is a question of law for a court to decide." *American Resources Insurance Co. v. H & H Stephens Construction, Inc*., 939 So. 2d 868, 873 (Ala. 2006) (internal quotes omitted). "A contractual provision is ambiguous if it is reasonably susceptible of more than one meaning." *Doster Construction Co. v. Marathon Electrical Contractors, Inc*., 32 So. 3d 1277, 1283 (Ala. 2009) (internal quotes omitted). Conversely, "terms are unambiguous [when they are] susceptible of only one reasonable meaning." *Id*. (internal quotes omitted).

"Where there is no indication that the terms of the contract are used in a special or technical sense, they will be given their ordinary, plain, and natural meaning." *Doster Construction*, 32 So. 3d at 1283 (internal quotes omitted). The defendant, citing an online dictionary,[5] asserts that the ordinary, plain and natural meaning of the word "proceeds" is restricted to "money." (Doc. 37 at 14). The plaintiffs counter with a definition from Mr. Black[6] describing "proceeds" as the value of property converted into money or as the amount of money received from

---

[4] The Agreement provides that it is to be construed in accordance with Alabama law, (Doc. 38-3 at 3), and both sides invoke Alabama rules of contract construction.

[5] *See generally Black Diamond Development, Inc. v. Thompson*, 979 So. 2d 47, 51 (Ala. 2007) (looking to a dictionary definition of a disputed contract term); *Carpet Installation and Supplies v. Alfa Mutual Insurance Co.*, 628 So. 2d 560, 562 (Ala. 1993) (a dictionary definition "is exactly the result of an examination into the interpretation that ordinary people would give to the word," and reliance on such authorities is encouraged).

[6] Henry Campbell Black, father of the law dictionary bearing his name.

a sale.  (Doc. 44 at 10).  The plaintiffs also cite the UCC, which defines "proceeds" in part as "rights arising out of collateral" and "claims arising out of … defects … in, or damage to, the collateral."  (*Id*. at 11).

The plaintiffs do not explain, and the Court does not discern, how Mr. Black's definition assists their case.  The plaintiffs focus their attention on the UCC definition, noting that the units were "collateral" for the loan to Sundance and arguing that, "because it is a claim arising out of a defect or damage to collateral, and rights arising out of the collateral, the remediation credits are proceeds."  (Doc. 44 at 11; *accord id*. at 13-14).  More than that, they insist their claim in the drywall litigation is itself "proceeds" because it is a right arising out of the collateral.  (*Id*. at 12 n.2, 15).

The Court finds the plaintiffs' argument less than compelling.[7]  Nevertheless, the Court assumes without deciding that the term "proceeds" may in some circumstances include something other than money.  The Court's task, however, is not to construe a single word in the abstract but to determine how it was used by the parties in a particular, concrete provision.  "It is well settled that a court in seeking to ascertain the intention of the parties in construing a contract, will consider the contract as a whole, although the immediate object of the inquiry is the meaning of a particular clause."  *N&L Enterprises, LLC v. Lioce Properties, LLP*, 51 So. 3d 273, 279 (Ala. 2010) (internal quotes omitted).  A review of paragraph 6 quickly dispels any possible ambiguity concerning the scope of "proceeds" as used in the Agreement, because it uniformly describes "proceeds" in monetary terms.

First, the parties anticipated that Sundance would receive proceeds "in the approximate amount of $500,000.00."  The parties did not anticipate that Sundance would receive proceeds of the approximate "value" of $500,000, as

---

[7] The Agreement addresses only proceeds of Sundance's drywall claim.  It is difficult to see how Sundance's drywall claim could be proceeds of Sundance's drywall claim.

would be necessary to encompass non-monetary proceeds.  Instead, the parties specified that the proceeds would be in the approximate "amount" of $500,000, a term that facially contemplates only monetary proceeds.

This plainly monetary sum is then defined as the "Chinese Drywall Settlement Proceeds" (hereinafter, the "Proceeds"), and the rest of the paragraph is devoted to detailing the parties' duties concerning the Proceeds – all of which are described in facially monetary terms.  Sundance:  (1) assigns the "full amount" of the Proceeds to Vision; (2) agrees that the "full amount" of the Proceeds shall be "paid over" to Vision;[8] and (3) agrees to direct the party responsible for "paying out" the Proceeds to transmit them to Vision.  For its part, Vision agrees to "refund" any excess Proceeds to Sundance.

The plaintiffs ignore this mountain of textual evidence.  Instead, they insist that "proceeds" cannot be limited to money because paragraph 6 uses the term "monetary proceeds."  The plaintiffs maintain that the adjective is redundant unless "proceeds," standing alone, extends beyond money.  (Doc. 44 at 15-16). Again, the Court must consider the entire provision, not an isolated phrase, and the context of the term eliminates the plaintiffs' argument:

> Sundance hereby assigns to Vision the full amount of the Chinese Drywall Settlement Proceeds, *including any and all monetary proceeds and payments* payable to Sundance that are derived from the Chinese Drywall Claims or from any other source whatsoever in connection with any and all claims made by Sundance relating to Chinese drywall ….

(Doc. 38-3 at 3 (emphasis added).

It is plain that the italicized phrase does not carve out some subset of the Proceeds for special treatment but instead defines "the full amount of the Chinese

---

[8] "In the construction of a written instrument it is firmly established that ordinarily the same word therein occurring more than once is to be given the same meaning unless the context indicates that a different meaning was intended." *Tennessee Corp. v. Hartford Accident & Indemnity Co.*, 463 F.2d 548, 551-52 (5th Cir. 1972).  There is no principled way to read "full amount" as extending beyond monetary proceeds when the initial use of "amount" was explicitly tied to money.

Drywall Settlement Proceeds" which Sundance is assigning. While "including" is sometimes used in the sense of "without limitation," here it is manifestly used in the sense of "without exception," for the purpose of preventing the plaintiffs from withholding any funds derived from any source as a result of Sundance's drywall claims. This conclusion, which is clear from the sentence itself, is underscored by the repeated monetary language used elsewhere in the provision and discussed above. Indeed, because the italicized language is definitional, it unambiguously limits the Proceeds to monetary payments.

The plaintiffs ask the Court to invoke the rule of *contra proferentem*, or construction against the drafter. (Doc. 44 at 16 n.3). It does not appear that their evidence is sufficiently precise to establish a factual predicate for this rule of construction, but the rule cannot apply in any event. The rule of *contra proferentem* can be invoked only "if all other rules of contract construction fail to resolve the ambiguity," *Homes of Legend, Inc. v. McCollough*, 776 So. 2d 741, 746 (Ala. 2000), and, as discussed above, a plain reading of paragraph 6 dispels any ambiguity arguably lurking in the unadorned term, "proceeds." That is, there is no ambiguity remaining to be resolved.

Unable to show any residual ambiguity in the Agreement, the plaintiffs turn to the settlement terms of the class action. They note that the agreement gave class members three options: (1) remediation by a contractor selected and paid by the settling defendants; (2) remediation by a contractor selected by the claimant and paid by the defendants; and (3) a cash payment without remediation (and with assurances the defendants would not be exposed to further liability). (Doc. 44-8 at 17-21). The plaintiffs complain that the defendant has not identified which of these options it considers not to generate "proceeds" under the Agreement and which of these options it would or would not have accepted. (Doc. 44 at 12-13).

The point of this argument is obscure, but it does not aid the plaintiffs' cause. It is perfectly plain from paragraph 6 and the defendant's argument that the defendant was prepared to accept a cash payment under the third option, since

such a payment constitutes "proceeds" under the Agreement, while the other two options – which do not result in a transfer of cash to the class member – could not constitute proceeds.[9]

## CONCLUSION

For the reasons set forth above, the defendant's motion for summary judgment is **granted**.  Judgment shall be entered accordingly by separate order.[10]

DONE and ORDERED this 16th day of December, 2014.

s/ WILLIAM H. STEELE
CHIEF UNITED STATES DISTRICT JUDGE

---

[9] The third, "cash-out" option is not involved in this lawsuit.  The amended complaint does not allege that the defendant refused to accept cash that Sundance received from the class action.  Instead, it alleges that "the terms of the settlement were that [a firm] would remediate the Sundance condominium units" (that is, Sundance selected one of the first two, non-cash options), and that the defendant (because it had already sold the units) declined to credit the plaintiffs with the value of this remediation. (Doc. 27 at 4-5).

[10] The action remains pending as to the defendant's amended counterclaim.  (Doc. 10).